UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-60628-CIV-COHN/SELTZER

THE BURLINGTON INSURANCE
COMPANY,

    Plaintiff,

v.

NORMANDY GENERAL PARTNERS, LLC,
as General Partner of NORMANDY VILLAGE
HOLDINGS, LLP, SHARKA WEBSTER,
ILEDIEU CIREUS, DEUNITHE CIREUS,
and STANLEY DERIVAL,

    Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Summary Judgment [DE 35]. The Court has considered the Motion, Defendants Iledieu Cireus, Deunithe Cireus, and Stanley Derival's Response [DE 52], Plaintiff's Reply [DE 57], the record in this case, and is otherwise fully advised in the premises.

## I. BACKGROUND

On August 9, 2009, Defendant Sharka Webster was working for Defendant Normandy General Partners, LLC, as General Partner of Normandy Village Holdings, LLP ("Normandy Village"), as a security guard at the Normandy Village apartment complex in Lauderhill, Broward County, Florida. DE 36 ¶ 1; DE 51 ¶ 2; DE 37-1 at 9. That morning, Defendant Deunithe Cireus was standing outside her apartment waiting for her daughter to be dropped off from church by the bus. DE 36 ¶ 2; DE 39-1 at 10. While Mrs. Cireus was waiting for her daughter, Webster approached her in a rough

manner and began asking her a number of questions.  DE 36 ¶ 2; DE 39-1 at 10-11. At the time, Defendant Stanley Derival, Mrs. Cireus' brother, was inside the apartment. DE 36 ¶ 3.  Upon hearing the commotion, he stepped outside and confronted Webster. Id.; DE 40-1 at 8-9.  During this exchange, Webster punched Derival in the face, grabbed him by the shirt, and stabbed him in the stomach with a knife.  DE 40-1 at 8-13.  Defendant Iledieu Cireus, Mrs. Cireus' husband, was approximately 200 feet away from his wife, talking to a friend, when he heard a loud noise coming from his wife's direction.  DE 38-1 at 7, 11.  Mr. Cireus went over to investigate the situation, but his wife had already gone inside.  Id.  He asked Webster what was going on, and Webster told him that "Nothing is going on."  Id. at 7.  Mr. Cireus turned to walk away from Webster, and Webster subsequently stabbed him in the back and punched him repeatedly.  Id. at 7,11-14.  Both Derival and Mr. Cireus were treated for their wounds at a local hospital and survived the incident.  Id. at 14-16; DE 40-1 at 14-18.

On August 2, 2010, Mr. and Mrs. Cireus filed suit in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida against Webster and Normandy Village.  See DE 52 at 2.  In the Amended Complaint in that action [DE 41-1] ("the Cireus Complaint"), they brought the following nine claims: (1) negligence and negligent training, against Normandy Village; (2) negligent supervision, against Normandy Village; (3) 'respondent superior,' against Normandy Village; (4) loss of consortium services, against Normandy Village; (5) negligent failure to provide and/or maintain safe premises, against Normandy Village; (6) breach of statutory duty to provide safe rental premises, against Normandy Village; (7) unconscionable and bad faith conduct, against Normandy Village; (8) assault and battery, against Webster; and (9) loss of consortium

services, against Webster. DE 41-1 at 1-12; DE 52 at 2. On October 27, 2010, Derival brought suit in a separate action against Webster and Normandy Village in state court. See DE 44-1. The Derival Complaint [DE 44-1] alleges that Webster, while acting within the scope of his employment by Normandy Village, stabbed him multiple times. Id. at 2. It further alleges that Normandy Village knew or should have known of Webster's violent tendencies, and negligently employed him as a security guard. Id. As a result of such negligent employment, Derival alleges he was injured, and seeks damages from Webster and Normandy Village. Id. at 2-3.

Prior to the August 9, 2009 incident, Plaintiff The Burlington Insurance Company issued a commercial general liability insurance policy, Policy No. 535B016308, to Normandy Village, for the policy period running from January 7, 2009 through January 7, 2010. See DE 1-3. That policy requires that Plaintiff defend and indemnify insured parties against any suit seeking damages for bodily injuries or property damages that are covered by the policy. DE 1-3 at 24; DE 45-2 at 3. Plaintiff is currently defending Normandy Village and Webster in the state-court suits under a reservation of rights. DE 1 at 7.

On April 9, 2012, Plaintiff brought this action for declaratory relief to establish that it is not liable under the policy to defend or indemnify Normandy Village or Webster in the Cireus and Derival suits. Both state-court cases have been abated pending the outcome of this case. See DE 52 at 3. In the instant motion, Plaintiff moves for summary judgment on the grounds that coverage is barred by the policy's Assault, Battery, or Other Physical Altercation Exclusion, and that the claims do not fall within any of the coverage provisions. Defendants oppose the motion.

3

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must show that "there is an absence of evidence to support the non-moving party's case." Id. at 325.  After the movant has met its burden, the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

## III. ANALYSIS

This case concerns the scope of Plaintiff's coverage under its insurance policy. "Under Florida law, insurance contracts are construed according to their plain meaning." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005). "[I]nsurance contracts are to be construed in a manner that is 'reasonable, practical, sensible, and just.'" U.S. Fire Ins. Co. v. Mikes, 576 F. Supp. 2d 1303, 1315 (M.D. Fla. 2007) aff'd sub nom. U.S. Fire Ins. Co. v. Freedom Vill. of Sun City Ctr., Ltd., 279 F. App'x 879 (11th Cir. 2008) (citing Doctors Co. v. Health Mgmt. Assocs., Inc., 943 So. 2d 807, 809 (Fla. Dist. Ct. App. 2006)). Moreover, "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005) (quotation and citation omitted). However, "[i]nsurance policy provisions excluding or limiting the insurer's liability are construed more strictly than coverage provisions." Doctors Co., 943 So. 2d at 809. Accordingly, to the extent that a coverage exclusion is ambiguous, it will be construed in favor of the insured. Id. (citing Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1140 (Fla. 1998)).

Here, Plaintiff asserts that all of the claims in the underlying actions arise out of an assault or battery, and therefore coverage is barred by the Assault, Battery, or Other Physical Altercation Exclusion ("the Exclusion"). Plaintiff further argues that the claims

do not fall within the scope of Coverage D, the Limited Assault or Battery Liability Coverage, because that section does not cover claims for assault or battery committed by an employee of the insured. Defendants dispute that all of the underlying claims arise out of an assault or battery, and further assert that so long as at least one of the claims does not arise out of assault or battery, Plaintiff has a duty to defend and indemnify against all claims.

### A. The Claims are Excluded from Coverage A by the Assault, Battery, or Other Physical Altercation Exclusion.

First, Plaintiff asserts that the claims are precluded from coverage under Coverage A of the policy by operation of the Exclusion, which states as follows:

1. Exclusion a. of 2. Exlcusions, COVERAGE A
   BODILY INJURY AND PROPERTY DAMAGE LIABILITY,
   SECTION I – COVERAGE, is replaced by:

   This insurance does not apply to:
   a.   Assault, Battery or Other Physical Altercation:

   "Bodily injury" or "property damage":
   . . . .

   (2)   Arising in whole or in part out of any "assault" or
         "battery" committed or attempted by any person.
   (3)   Arising in whole or in part out of any attempt to avoid,
         prevent, suppress or halt any actual or threatened "assault"
         or "battery."[1]

DE 45-4 at 4. Plaintiff maintains that, while some of the Cireus and Derival claims

---

[1] The policy defines "assault" as "any willful attempt or threat to inflict injury upon the person of another, when coupled with an apparent present ability so to do, and any intentional display of force such as would give a victim reason to fear or expect immediate bodily harm." DE 45-4 at 2. "Battery" is defined as "wrongful physical contact with a person without his or her consent that entails some injury or offensive touching." Id.

allege negligence, all of the claims ultimately "arise in whole or in part out of" the battery committed by Webster.  Therefore, Plaintiff argues, there is no coverage for the underlying claims under Coverage A of the policy.  The Court agrees.

It is well-established under Florida law that, in insurance contracts, the term "arising out of" is construed broadly, and "is equivalent to the terms 'having its origins in,' 'growing out of,' 'flowing from,' 'incident to,' or 'having a connection with.'" Century Sur. Co. v. Seductions, LLC, 609 F. Supp. 2d 1273, 1277 (S.D. Fla. 2009) (citing Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d. 528, 539-40 (Fla. 2005)). Particularly, within the context of assault and battery coverage limitations, the case law shows that injury claims described in terms of the employer's negligence are "in essence, injuries that arise from 'assault and battery.'" Council v. Paradigm Ins. Co., 133 F. Supp. 2d 1339, 1342-43 (M.D. Fla. 2001) (citing Miami Beach Entm't, Inc. v. First Oak Brook Corp. Syndicate, 682 So. 2d 161 (Fla. 3d DCA 1996);and Britamco Underwriter's, Inc. v. Zuma Corp., 576 So. 2d 965 (Fla. 5th DCA 1991)); see also Essex Ins. Co. v. Big Top of Tampa, Inc., 53 So. 3d 1220 (Fla. 2d DCA 2011) ("Policy provisions that exclude coverage for claims based on an assault or battery have been extended to exclude coverage for claims of negligence which arise out of the alleged assault or battery.").  In Big Top of Tampa, the plaintiff in the underlying lawsuit sought recovery for the bodily injuries he suffered when he was attacked by an employee of the insured party, a flea market.  53 So. 3d at 1222.  He sued the insured for negligent training, negligent hiring, and negligent supervision and retention of the employee.  Id.  As in the present case, the insured's policy contained an exclusion for damages 'arising out of' an assault and battery.  Id.  The court concluded that the negligence claims were

sufficiently related to the assault and battery as to fall within the terms of the exclusion. Id. at 1223-24; see also Perrine Food Retailers v. Odyssey Re (london), Ltd., 721 So. 2d 402, 404 (Fla. 3d DCA 1998) (holding that "[a]n assault and battery exclusion in a liability policy precludes coverage for the negligence of the insured which arises as a result of the assault and battery."); Clarendon Am. Ins. Co. v. Burlington Ins. Co., 677 F. Supp. 2d 1317 (S.D. Fla. 2009) (holding that a restaurant's CGL insurer had no duty to defend or indemnify against negligence claims where customer was attacked by other patrons).

  Here, all of the claims in the underlying suits relate directly to the assault and battery committed by Webster. Counts I and II allege that Normandy Village negligently hired and supervised Webster. Count III alleges that Normandy is vicariously liable for Webster's battery. Counts IV and IX are claims for loss of consortium against Normandy Village and Webster, respectively, for the injuries to Mr. Cireus as a result of the stabbing. Counts V and VI claim that Normandy Village failed to maintain safe premises, and that, as a result, the plaintiffs were injured by Webster. Count VII alleges that Normandy Village induced Mr. Cireus to sign the rental agreement by falsely assuring him that there would be proper security in the complex. Count VIII is a claim for assault and battery against Webster. The Derival Complaint similarly alleges negligent employment and possibly battery, and seeks damages from Normandy Village and Webster. Each of these claims plainly arises from the assault and battery allegedly committed by Webster, and therefore falls within the terms of the Exclusion.

  Defendants make no arguments directly on this issue. Rather, Defendants assert that at least some of the underlying claims are pleaded in "the language of

negligence," and thus the Derival and Cireus Complaints sufficiently allege an "occurrence" within the meaning of Coverage A.  Therefore, Defendants contend, Plaintiff has a duty to defend in the underlying actions.  This argument misses the point.  Even if the underlying complaints allege an "occurrence," all of the claims nonetheless arise out of assault or battery.  Defendants cite no authority to the contrary.  Therefore, these claims are excluded from Coverage A by the Assault, Battery, or Other Physical Altercation Exclusion.

### B. The Claims are Excluded from Coverage D Because the Battery was Committed by an Insured.

Plaintiff further contends that the claims do not fall within the ambit of Coverage D, the Limited Assault or Battery Coverage, which provides as follows:

> A.   Coverage D - LIMITED ASSAULT OR BATTERY COVERAGE is added to SECTION I – COVERAGES:
>
> 1.   Insuring Agreement
>
> a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies arising out of "Assault" or "Battery".
>
> We will have the right and duty to defend the insured against any "suit" seeking these damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" to which this insurance does not apply. . . .

DE 45-3 at 14.  This section provides coverage for up to $300,000 in damages.  Id. However, it also contains several exclusions to coverage, one of which bars coverage for claims arising from an "'[a]ssault' or 'battery' committed by any insured or agent of

9

any insured." Id.  Additionally, under Section II of the policy, it states that insured parties include:

> . . . your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

DE 45-2 at 14.  The term 'employee' is defined as:

> . . . [A] person working for salary or wages, or any substitute for salary or wages, as compensation in any manner by any insured, under any contract of hire, express or implied, oral or written, where the insured, as employer, has the power or right to control and direct the employee. "Employee" includes a "leased worker" or "temporary worker".

DE 45-4 at 6.

Plaintiff contends that the pleadings in the state-court actions conclusively establish that Webster was an employee of Normandy Village for the purpose this case. Therefore, Plaintiff argues, Webster qualifies as an insured and there is no coverage under the Limited Assault or Battery Coverage.  The Court agrees.  Under Florida law, the duty to defend "is determined solely by the allegations against the insured, not by the actual facts, nor the insured's version of facts."  Irvine v. Prudential Prop. & Cas. Ins. Co., 630 So. 2d 579, 579-80 (Fla. 3d DCA 1993).  Accordingly, "when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend."  Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So. 2d 810, 813 (Fla. 1st DCA 1985); see also Jones v. Fla. Ins. Guar. Ass'n, 908 So. 2d 435, 443 (Fla. 2005) ("The duty to defend must be determined from the allegations in the complaint.").  Here, the operative complaints of both underlying actions identify Webster as an "employee" of Normandy Village who

was "acting in the course and scope of his employment."  DE 41-1 ¶ 7; DE 44-1 ¶¶ 6, 10.  The Derival Complaint alleges that Webster "was an untrained and unlicensed security guard" who Normandy Village "negligently employed and continued to employ."  DE44-1 ¶¶ 9, 11.  The Cireus Complaint claims that Webster was "the security guard employed by NORMANDY VILLAGE," that he was "on duty for the protection of the Plaintiffs," and that he was "an employee, servant, and authorized agent of NORMANDY VILLAGE and on duty at the time of the incident."  DE 41-1 ¶¶ 13-14.  These allegations clearly place the claims within the exception to coverage for an assault or battery committed by an insured.

Defendants respond, in their Statement of Material Facts in opposition to the instant motion [DE 51], that the record evidence shows that Webster was an independent contractor rather than an employee.  Defendants point to Webster's deposition testimony in which he states, among other things, that he bought his own uniform and badge, furnished his own tools, and that he received limited supervision from Normandy Village.  See DE 51 ¶¶ 3-4 (citing DE 37-1 at 3-4).  Defendants assert that such factors tend to establish that he was an independent contractor, not an employee, and therefore that he does not qualify as an insured under the policy.  However, none of these facts were pleaded in the operative complaints in the underlying actions.  Rather, the complaints state exclusively and repeatedly that Webster was an employee of Normandy Village, acting within the scope of his employment as a security guard at the time of the incident.  Accordingly, the Court concludes that the claims fall within the aforementioned exclusion to Coverage D.

**C. Remaining Issues**

Plaintiff asserts that there is no coverage under Coverage C – Medical Payments. Defendants do not appear to dispute this, pointing out instead that Coverage D allows for assault and battery coverage. See DE 52 at 16. Accordingly, the Court concludes that there is no coverage under the policy for the claims contained in the Cireus and Derival Complaints, and Plaintiff has no duty to defend against such claims. Moreover, because Plaintiff has no duty defend in the underlying actions, it also does not have a duty to indemnify. See Big Top of Tampa, 53 So. 2d at 1224 (citing WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co., 16 So. 3d 904, 906 (Fla. 2d DCA 2009) ("[T]he duty to indemnify is narrower than the duty to defend and thus cannot exist if there is no duty to defend.")).

Lastly, Defendants contend that there is an issue of fact as to whether the copy of the policy that Plaintiff supplied to Defendants was a true copy. Defendants point out that the copy contained a disclaimer which stated that "No representation or warranty is made that this copy is identical in all respects to the policy actually issued to the policyholder." DE 45-1 at 1. However, on the same page, it states that it is a "true copy of the policy." Id. Moreover, Plaintiff provides an affidavit from its Claim Manager, Frank Dent, which attests to the validity of the copy provided to Defendants. See DE 59-1. Defendants have not submitted any evidence to the contrary. Therefore, the Court finds that there is no disputed issue of material fact with regard to the content of the policy or the copy provided to Defendants. Accordingly, summary judgment for Plaintiff is appropriate.

## IV. CONCLUSION

Thus, for the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment [DE 35] is **GRANTED**.  The Court will enter a separate Final Declaratory Judgment consistent with this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida on this 6th day of May, 2013.

						_____
						JAMES I. COHN
						United States District Judge

Copies provided to:
Counsel of record via CM/ECF.